UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT:  WESTERN DISTRICT OF NEW YORK

GARY ALJOE and GARRETT ALJOE,

          Plaintiffs,

          Index No.

-vs-

**COMPLAINT**

CITY OF BUFFALO POLICE DETECTIVE SHAWN ADAMS,
TOWN OF TONAWANDA POLICE OFFICER DEREK SCOTT,
and TOWN OF TONAWANDA POLICE OFFICER JOHN DOE 1-2

          Defendants.

## JURY DEMAND

Trial by Jury on all issues is demanded

## PRELIMINARY INTRODUCTION

1. This is an action brought pursuant to 42 U.S.C § 1983 and 42 U.S.C § 1988 as applicable to the Fourth Amendment of the United States Constitution, and as bestowed upon the States through the Fourteenth Amendment of said Constitution. The claim arises from a December 20, 2016 incident in which both City of Buffalo and Town of Tonawanda Police Officers, acting under the color of State Law, intentionally and willfully subjected Plaintiffs to, among other things, the deprivation of Plaintiffs' Fourth Amendment Rights.

## PARTIES

2.      Plaintiff, Gary Aljoe, resides at 85 Ullman Street, Buffalo, New York, 14207, which is located in Erie County and the State of New York. At the time of the transactions and occurrences that give rise to this lawsuit, Plaintiff Gary Aljoe resided at this same residence.

3.      Plaintiff, Garrett Aljoe, resides at 85 Ullman Street, Buffalo, New York, 14207, which is located in Erie County and the State of New York. At the time of the transactions and occurrences that give rise to this lawsuit, Plaintiff Garrett Aljoe resided at this same residence.

4.      Upon information and belief, City of Buffalo Police Detective Shawn Adams, is employed by the City of Buffalo and was acting in such capacity during the events that give rise to this lawsuit.

5.      Upon information and belief, Town of Tonawanda Police Officer Derek Scott, is employed by the Town of Tonawanda and was acting in such capacity during the events that give rise to this lawsuit.

6.      Upon information and belief, Town of Tonawanda Police Officer John Doe, is employed by the Town of Tonawanda and was acting in such capacity during the events that gave rise to the lawsuit.

## JURISDICTION

7.      Plaintiffs brings this action to recover damages for the violation of their civil rights under the Fourth Amendment to the United States Constitution, codified at 42 U.S.C. § 1983, and as bestowed upon the states and its citizens through the Due Process Clause by the Fourteenth Amendment of the United States Constitution.

8.  Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1332 (federal question) and § 1343 (civil rights).

9.  Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. §2201 and § 2202.

10. Compensatory and Punitive damages are sought pursuant to 42 U.S.C. § 1983.

11. Costs and Attorney's fees may be awarded pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. Rule 54.

## VENUE

12. This action properly lies in the Western District of New York, pursuant to 28 U.S.C. § 1343(3), because the claims arose in this judicial district and the Defendants reside in and /or do business in Erie County.

## FACTUAL BACKGROUND

13. On or about December 15, 2016, Defendant obtained a "no-knock" search warrant for Plaintiffs' residence at 85 Ullman Street, Buffalo New York. This warrant is attached hereto as Exhibit A.

14. Upon information and belief, Defendant Shawn Adams had a warrant that was wrongfully and fraudulently obtained, given that the Plaintiffs do not sell drugs, and the only description of an individual given in the warrant is limited to a male whose first and last name are unknown. This is a description which would apply to roughly half of the human population, and one which shows a total lack of effort and due diligence on the part of the Defendant Shawn Adams in both securing a proper warrant based on probable cause as well as observing Plaintiffs' Constitutional rights.

15. Upon information and belief, this warrant was acquired due to the reckless disregard for the truth on the part of Defendant Shawn Adams. Defendant Adams intentionally or recklessly omitted material information which was necessary to the finding of probable cause. These material omissions of fact are the identity of the individuals who reside at 85 Ullman, now known to be the Plaintiffs, and that stationary and drive-by surveillance of the home had not led to observation of criminal activity within the above-referenced residence.

16. On or about December 20, 2016, at approximately 5:30 AM, Defendants executed a search warrant at Plaintiffs' residence.

17. This search warrant was the result of the reckless and sloppy investigation into the drug trafficking activity in Plaintiffs' neighborhood on the part of Defendant Detective Shawn Adams.

18. The Defendant officers, with no probable cause that a crime was being committed nor consent from any authorized party, entered onto Plaintiffs' premises. Said Defendants used a battering ram to smash through the door to Plaintiffs' enclosed porch, then threw a flashbang grenade into the enclosed porch. Finally, the Defendants once again used a battering ram to break down the front door to the home and stormed the house.

19. Plaintiff Gary Aljoe was sleeping on a couch in close proximity to the front door when the warrant was executed.

20. His best friend and longtime companion "Sarge" a seven-year-old pure bred German Shepard, was sleeping on a nearby couch also located near the front entrance.

21. When Plaintiff Gary Aljoe was awoken by the chaos, he rushed to grab a phone to call the authorities, believing he was the victim of a home invasion.

22. When he heard the officers shouting "search warrant," he went to the door to allow them in.

23. Before he could make his way to the door and allow the officers in, the officers smashed through the front door and began screaming at the elderly man to get on the ground.

24. As Gary Aljoe was complying with the officers' orders, he heard two gunshots.

25. At the time, his dog had not even barked at the officers, nor lunged at them, and he hadn't acted aggressively in any manner.

26. When Gary Aljoe was on the ground, he looked over to the porch where he saw "Sarge" cowering in the corner.

27. It was at this point he realized one of his worst fears had come true, and his best friend had been shot and was now bleeding to death.

28. At this point, two officers asked Gary Aljoe if anyone else was in the house. He told them that his son, Garrett Aljoe, was in bed upstairs.

29. Gary Aljoe then turned his head to once again face the porch area where he saw "Sarge" being placed into a bag as though he were trash which needed to be disposed of.

30. Gary Aljoe was then allowed to sit up as the nerve damage in his legs does not allow him to remain in the same position for extended periods of time.

31. As Gary Aljoe was finally allowed to sit up, he saw his son, Garrett Aljoe, being brought down the stairs in cuffs.

32. Garrett Aljoe was then interrogated in the kitchen as Gary Aljoe remained restrained in his living room.

33. Plaintiff Gary Aljoe was talking to one of the officers who was in the living room with him, trying to ascertain what exactly was going on.

34. One officer saw Gary Aljoe's military jacket with his rank on it and he asked said Plaintiff who the jacket belonged to. He told them that it was his, and that he was a retired officer.

35. He then asked why his dog had been shot.

36. One detective overheard this and felt the need to say "well, if you didn't have drugs in your house, your dog wouldn't be dead."

37. This callous and unfounded remark shocked Gary Aljoe. No officer, at any point, proclaimed that Sarge had acted aggressively in any way, shape, or form.

38. At no time did the Defendant officers indicate that a concern for their well-being precipitated the shooting of Plaintiffs' companion animal.

39. Shortly after, the officers began to leave and Gary Aljoe was freed from his restraints.

40. When all the officers had left and taken his son, Gary Aljoe sat alone on his couch trying to comprehend what had just happened. His best friend had been shot and killed, and his house was in shambles, all because of reckless police work.

41. Since this incident, Plaintiff Gary Aljoe has been suffering from mental and emotional trauma, driving him into depression. This has caused him to seek psychiatric treatment at the VA hospital.

42. The incident was quite similar from Plaintiff Garrett Aljoe's perspective.

43. He was upstairs in his bedroom when the commotion started.

44. He looked from his window to see officers clad in SWAT gear storming his home.

45. He then heard a loud bang quickly followed by two gunshots.

46. It was at this point that Garrett Aljoe proceeded from his room to the stairwell and began to yell to the officers that he was unarmed and was coming down to them.

47. Garrett Aljoe was then restrained by the officers and brought to the kitchen to be questioned.

48. During this questioning, he overheard his father, Gary Aljoe, asking the officers what had happened to "Sarge." At this point, he learned that the dog had been killed.

49. This understandably made Garrett Aljoe deeply upset, making him to begin to cry and ask why they had shot the dog.

50. While getting no real answer, Garrett Aljoe did overhear one of the officer's comment that he had double tapped the dog, a military term used to refer to shooting a target twice to ensure death.

51. While being questioned in the kitchen, Garrett Aljoe was asked what his name was. When he told them it was Garrett Aljoe, they said that he was who they were looking for. This claim is confusing if not contradictory to the face of the warrant in question, as no name is specified on the warrant and the only description given is that the target is male.

52. After the police had ransacked the house during the search, they were able to only find a baggy with cocaine residue in it, along with purported paraphernalia items seized. Assuming arguendo that the bad was not planted by the officers, then the bag of residue

must have been left over from about a year prior when Plaintiff Garrett Aljoe occasionally used cocaine on a recreational basis.

53. Garrett Aljoe was eventually arrested on trumped up charges and released several days later.

54. Following this incident, Garrett Aljoe has suffered from severe mental and emotional trauma.

55. This resulted in him seeking treatment from Horizon Health Services in February 2017.

56. Plaintiff Garrett Aljoe still seeks treatment to this day to deal with the psychological issues he has been plagued with since this incident.

**Plaintiffs' First Cause of Action for Violation of the Fourth Amendment per 42 U.S.C. § 1983 Against Defendant City of Buffalo Police Detective Shawn Adams for Violating Plaintiffs' Right Not to be Searched Absent a Warrant Supported by Probable Cause.**

57. Plaintiffs, Gary and Garrett Aljoe, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

58. Upon information and belief, when Defendant Shawn Adams submitted his probable cause affidavit in order to secure a "no-knock" warrant for Plaintiffs' home, he recklessly omitted facts which were necessary to the finding of probable cause.

59. It is believed that these facts include the identity of the occupants of 85 Ullman Street, now known to be the Plaintiffs. In addition, Defendant Adams omitted the facts that both stationary and drive-by surveillance had not led to the observation of any criminal activity within said residence, which undermined any finding of probable cause.

60. "Where a warrant affidavit is based upon information provided by a confidential informant, any omissions become all the more glaring, because any material omission necessarily alters the 'totality of the circumstances' upon which the confidential information is to be assessed. McColley v County of Rensselaer, 740 F.3d 817, 824 (2d Cir. 2014).

61. Defendant Shawn Adams' failure to provide crucial information to the Judge resulted in either the improper issuance of a warrant, or the improper issuance of a "no-knock" warrant.

62. As a result of the reckless actions of Defendant Shawn Adams, Plaintiffs were subjected to an illegal invasion of their home accompanied by an excessive use of force on the part of the Defendants. This resulted in significant property damage to the Plaintiffs' home and the murder of their beloved dog "Sarge." The excessive use of force used in the raid and the murder of "Sarge" has resulted in emotional and psychological injuries on the part of Plaintiffs, as well as damage to their property.

**Second Cause of Action for Plaintiffs Gary Aljoe and Garrett Aljoe, for excessive use of force against Town of Tonawanda Police Officers John Doe 1-2 and Town of Tonawanda Police Officer Derek Scott."**

63. Plaintiffs, Gary and Garrett Aljoe, repeat and reiterate each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

64. Prior to the execution of the search warrant at Plaintiffs' residence, one or more Town of Tonawanda John Doe Defendant, aka John Doe 1, engaged in planning and approving the raid plan to be used while executing the search warrant at Plaintiffs' home.

65. The individual or individuals who engaged in the planning and approval of the raid plan to be used on Plaintiffs' home are liable for the subsequent excessive use of force which occurred during the execution of the search warrant.

66. "[P]lanners may be liable under section 1983 to the extent that a plan for a search or seizure, as formulated and approved by those defendants, provides for and results in an unconstitutionally excessive use of force." Terebesi v. Torreso, 764 F.3d 217, 235 (2d Cir. 2014).

67. In the present case, the Plaintiffs were subjected to the excessive use of force as a result of the raid plan. These uses of excessive force are the use of a flashbang grenade during the execution of the warrant and the shooting of Plaintiffs' dog "Sarge" by Defendant Scott.

68. At this time, it is unknown which member of the Town of Tonawanda Police Department deployed the flashbang grenade into the Plaintiffs' home but the John Doe 2 which did subjected the Plaintiffs to an excessive use of force.

69. "The Fourth Amendment principles governing police use of force apply with "obvious clarity," to the unreasonable deployment of an explosive device in the home. Terebesi, 764 F.3d at 236 (2d Cir. 2014) citing, United States v. Lanier, 520 U.S. 259, 271 (1997).

70. In this particular instance, the use of a flashbang grenade by Town of Tonawanda Police Department John Doe 2 was unreasonable given the circumstances.

71. Defendant Tonawanda Police Department John Doe 2 had no inclination that the Plaintiffs had any violent tendencies or present a high risk of violent confrontation.

72. It is upon information and belief these devices are used routinely in searches engaged in by the Defendants, a practice which has been explicitly disavowed by the Second Circuit. See, Terebesi, 764 F.3d at 238 (2d Cir. 2014).

73. Additionally, Defendant Scott exercised excessive force when he shot Plaintiffs' dog "Sarge." While Defendant Scott's killing of "Sarge" constitutes a deprivation of property on his part, the use of a firearm and the manner in which the search was conducted trigger a use of force claim.

74. Essentially, "any reasonable officer must understand that his decision to fire a gun during the execution of a search warrant is subject to Fourth Amendment scrutiny, regardless of whether he hits anyone." Terebesi, 764 F.3d at 240 (2d Cir. 2014).

75. The Plaintiffs were subjected to an excessive use of force on two occasions via the decision of an unknown Tonawanda Defendant to use a flashbang grenade during the search and Defendant Scott's unreasonable decision to discharge his firearm. The hereto unknown planning Defendant(s) are liable for these excessive uses of force as they planned for said uses of force against Plaintiffs.

**Third Cause of Action for violations of the Fourth Amendment per 42 U.S.C. § 1983 for the unlawful damaging and deprivation of Plaintiff Gary Aljoe's property rights against Town of Tonawanda Police Officer Derek Scott for the unreasonable slaying of Plaintiff's canine, aka "Sarge"**.

76. Plaintiff, Gary Aljoe, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

77. On or about December 20, 2016, numerous officers came to Plaintiff's residence and entered the residence without the permission of the Plaintiff. Said Officers executed a search warrant which was completely devoid of any description of the individual they

were looking for. The target of the warrant was a male whose first and last name were unknown. This lack of any real description given shows the reckless manner in which the police went about their investigation and execution of the warrant.

78. This reckless and lazy police work resulted in a warrant wrongly being issued for the residence of a veteran of the United States armed forces and two individuals who have never engaged in drug trafficking in their entire life.

79. The execution of this fraudulently obtained warrant resulted in the trashing of Plaintiffs' home and the brutal and unnecessary slaying of "Sarge", the seven-year-old family dog that has never exhibited any sort of aggressive behavior.

80. Officer Derek Scott shot the animal twice after it came to the front door after said door was smashed through via a battering ram. Said animal did not exhibit any aggressive behavior prior to his demise. Defendant Scott and the SWAT team had countless other less lethal options available should they have been scared of the canine, and the failure to utilize said options is objectively unreasonable from the point of view of any reasonable SWAT team officer under those circumstances.

81. "Sarge", as Plaintiff Garrett Aljoe's best friend and companion, constitutes a special classification of property under New York State Law. Defendant Scott seized and destroyed said companion animal in a matter that shocks the conscience, and in a criminal and unjustified matter. Travis v. Murray, 42 Misc.3d 447 (2013).

82. It is undisputed that, in the Second Circuit, the unreasonable shooting of a companion animal constitutes an unreasonable "seizure," of personal property under the Fourth Amendment. Carroll v. County of Monroe, 712 F.3d 649 (2013).

83. Said above-referenced actions, both individually and in their entirety, fully

disregarded the Constitutional rights of the Plaintiffs to be free of unlawful and unreasonable seizures under the Fourth and Fourteenth Amendments of the Constitution.

### Punitive Damages against all Defendants aside from the City of Buffalo, in their individual Capacities

84.     Plaintiff incorporates by reference all of the allegations set forth herein in this Complaint as if fully set forth herein.

85.     All Defendants, in their individual capacities, were deliberately indifferent to Plaintiff's Constitutional rights as a result of their above-referenced actions.

86.     Punitive damages are justified against the above-stated Defendants for their deliberate indifference and malice towards the Plaintiff herein.

WHEREFORE, the Plaintiff demands judgment on the above counts against the Defendants, their units, their officers, employees, against and other persons acting in concert or participation with them as stated above, and award the following amounts:

A. Compensatory damages in favor of the Plaintiffs in an amount to be determined by a jury;

B. Exemplary damages in favor of the Plaintiff;

C. Costs of this action, including reasonable attorney fees to the Plaintiff Pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, U.S.C. 1988 (1976); and

D. Such other relief as the court may deem appropriate.

DATED:    Buffalo, New York
             September 21, 2018

                                        The Law Offices of Matthew Albert

                                        By: /s/ Matthew Albert
                                        Matthew Albert, ESQ.
                                        Attorney for Plaintiff
                                        Office and P.O. Address
                                        254 Richmond Ave.
                                        Buffalo, New York 14222
                                        (716) 445-4119
                                        mattalbertlaw@gmail.com